

Equipment Finance, Inc.

**MASTER LEASE AGREEMENT**

THIS LEASE, dated as of July 06, 2005, is made by and between U.S. Bancorp Equipment Finance, Inc. - Vendor Finance Group, hereafter referred to as "Lessor," and Young Construction & Paving, L.L.C. hereafter referred to as "Lessee."

### LESSOR AND LESSEE COVENANT AND AGREE AS FOLLOWS:

**1. PROPERTY LEASED.** Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the personal property ("Property") together with any replacements, additions, repairs, now or hereafter incorporated therein as described in any Schedule to Master Lease Agreement ("Schedule") now or hereafter executed by the parties hereto.

**2. TERM.** This Lease shall become effective on the execution hereof by Lessor. The Term of this Lease may consist of an "Interim Term" and a "Base Term" in regard to each Schedule. The Interim Term for each Schedule shall begin on the date that Lessee executes a Delivery and Acceptance Certificate in connection with any item of Property or provides to Lessor written authorization for payment for such item of Property. Each Interim Term shall continue until the Base Term Commencement Date set forth in each Schedule. The Base Term for each Schedule shall be triggered by Lessee's execution of a Delivery and Acceptance Certificate in connection with the Property described in the Schedule and shall begin on the Base Term Commencement Date and shall continue for the period specified in each Schedule. During each Interim Term, if any, Lessee shall pay rental ("Interim Rental") in the amount set forth in each Schedule plus applicable tax thereon.

**3. RENT, PAYMENT AND TAXES.** Rental payments are specified in each Schedule. All rents shall be payable by Lessee each month on or before the payment date shown in each Schedule at Lessor's address herein, or as otherwise directed by Lessor, without notice or demand and without abatement, set-off or deduction of any amount whatsoever. Lessee shall pay when due all taxes, fees, assessments, or other charges, however designated, now or hereafter levied or based upon the rentals, ownership, use, possession, leasing, operation, control, or maintenance of the Property, whether or not payable by Lessor, excluding Lessor's income, franchise and business and occupation taxes, and shall supply Lessor with proof of payment satisfactory to Lessor at least seven (7) days before delinquency. At its option, Lessor may pay any tax, assessment, insurance premium, expense, repair, release, confiscation expense, lien, encumbrance, or other charge or fee payable hereunder by Lessee, and any amount so paid shall be repayable by Lessee on demand.

For any payment due hereunder which is not paid within ten (10) days after the date such payment is due, Lessee agrees to pay a late charge calculated thereon at a rate of five percent (5%) of such overdue amount. The parties hereto agree that: a) the amount of such late charge represents a reasonable estimate of the cost that Lessor would incur in processing each delinquent payment by Lessee and that such late charge shall be paid as liquidated damages for each delinquent payment; and, b) the payment of late charges and the payment of Default Interest are distinct and separate from one another. Acceptance of any late charge or interest shall not constitute a waiver of default with respect to the overdue amount or prevent Lessor from exercising any other available rights and remedies. Payments received shall be applied first to delinquent amounts due, including late charges, then to current installments. If any such rental payment is made by check and such check is returned to Lessor for any reason, including without limitation, insufficient funds in Lessee's account, then Lessee shall be assessed a fee of $25.00 in addition to any other late charge or any other fee which may be applicable.

If the Property is located in a jurisdiction which imposes any "Sales," "Use," or "Rental" tax, at Lessor's option, Lessor shall collect such tax from Lessee and remit such tax to the appropriate taxing authority or Lessee shall remit such tax directly to the appropriate taxing authority. Such requirement may only be waived if Lessee is exempt from such tax under applicable laws or regulations. Lessee is responsible for ensuring that such exemption is properly documented in accordance with such laws and regulations and that such documentation is provided to Lessor at the inception of each Schedule.

Except as specifically provided in the Schedule, if the Property is subject to personal property taxes, Lessor shall report all leased Property to the proper taxing authorities unless the laws or regulations of the applicable taxing jurisdictions require that Lessee shall report such Property. If Lessor receives any invoice from the taxing authorities for applicable personal property taxes, Lessor shall pay any such taxes directly and Lessee agrees to reimburse Lessor for all such taxes paid by Lessor. If Lessee receives any such invoice, Lessee agrees to promptly remit such taxes directly to the taxing authorities and maintain proof of payment. Upon termination of each Schedule, Lessor will, if applicable, estimate Personal Property Taxes on the Property based upon the most recent tax assessment of the Property or on the tax rates and taxable value calculations as available from the appropriate taxing jurisdiction. In the event that the actual personal property tax bill is within $500.00 of such estimate, then Lessor shall not seek reimbursement from Lessee for any underpayment, and Lessor may retain any overpayment. If the difference between such estimate and the actual tax bill exceeds $500.00, Lessor shall refund or Lessee shall remit the entire difference.

**4. LOSS OR DAMAGE.** No loss or damage to the Property, or any part of it, shall impair any obligation of Lessee hereunder. Lessee assumes all risk of damage to or loss of the Property, however caused, while in transit and during the term hereof. If any Property is totally destroyed, Lessee's liability to pay rent for it may be discharged by paying Lessor the Stipulated Loss Value of the Property if such a Value is provided in the applicable Schedule or, the amount specified in Section 14(e) of this Lease, less the amount of any recovery received by Lessor from any insurance or other source.

**5. OWNERSHIP, LOCATION, MAINTENANCE AND USE.** Lessee transfers to Lessor all right, title and interest, including any and all ownership interest, which Lessee may have in or to the Property. Lessee represents and warrants that it has the legal right to make such transfer and that such transfer does not constitute a transfer of all or substantially all of the assets of Lessee, and that such transfer does not constitute all or a portion of a "bulk transfer" under the Uniform Commercial Code. Unless otherwise stated in any Schedule, Lessor shall be the owner of and hold legal title to the Property for all purposes. At its own risk, Lessee shall use or permit the use of the Property primarily at the location specified in the Schedule (unless the Property is mobile, in which case it may be moved in the ordinary course of business) and shall not remove the Property from such location without prompt written notice to Lessor. Notwithstanding the foregoing, the Property shall not be moved outside the United States without Lessor's prior written consent. Without Lessor's prior written consent, Lessee shall not loan, sublet, part with possession or otherwise dispose of the Property. Lessee shall at its sole expense maintain the Property in good repair, appearance and functional order and in compliance with any manufacturer's and regulatory maintenance and performance standards, shall keep complete records and documents regarding its use, maintenance and repair, shall not use or permit the use of the Property in any unintended, injurious or unlawful manner, shall not permit use or operation of the Property by any one other than Lessee's qualified employees and shall not change or alter the Property without Lessor's written consent. Lessee shall adhere to reasonable practices for Lessee's industry and the type of Property, for security against terrorism and other risks. Lessee shall not create, cause, or permit any kind of claim, levy, lien or legal process on the Property, and shall forthwith satisfy, remove and procure the release thereof. The Property is and always shall remain personal property. Lessee shall not cause or permit the Property to be used or located in such a manner that it might be deemed a fixture. Lessee shall secure from each person not a party hereto who might secure an interest, lien or other claim in the Property, a waiver thereof. At Lessor's request, Lessee shall affix and maintain, at its expense, in a prominent and visible location, all ownership notices supplied by Lessor.

**EXHIBIT 1**

6. **LEASE.** This is a non-cancelable contract of lease. Except as otherwise provided in any Schedule hereunder, nothing herein or in any other document executed in conjunction herewith shall be construed as conveying or granting to Lessee any right, title or interest, legal or equitable, in or to the Property, other than possession and use, subject to and upon full compliance with the provisions hereof. Lessor shall not interfere with Lessee's right of quiet enjoyment so long as there is no Event of Default hereunder. Lessee and Lessor agree that this Lease is a "Finance Lease" as defined by the Uniform Commercial Code Article 2A, the Uniform Personal Property Leasing Act. Notwithstanding the foregoing, Lessee hereby grants to Lessor a security interest in the Property and in any of Lessee's rights in any associated software, as security for all Lessee's obligations to Lessor of every kind and nature. Lessee authorizes Lessor to file financing statement(s) and to be named as lienholder and/or owner on any vehicle title(s).

Lessee hereby acknowledges that all of the leased Property was selected by Lessee from supplier(s) chosen by Lessee. Lessee is familiar with all supply contract rights provided by the supplier(s) and is aware that the supplier(s) may be contacted for a full description of any rights Lessee may have under any supply contract. Providing Lessee is not in default under this Lease, Lessor hereby assigns to Lessee, without recourse, all rights arising under any warranties applicable to the Property provided by the manufacturer or any other person. All proceeds of any warranty claim from the manufacturer or any other person shall first be used to repair the affected Property.

7. **GENERAL INDEMNIFICATION AND INSURANCE.** Lessee assumes liability for, and agrees to defend, indemnify and hold Lessor harmless from any claim, liability, loss, cost, expense, or damage of every nature (including, without limitation, fines, forfeitures, penalties, settlements, and attorneys' fees) by or to any person whomsoever and/or property whatsoever, regardless of the basis, including allegations (by third parties) of wrongful, negligent or improper act or misuse by Lessor, which results from or pertains to the leasing, manufacture, delivery, ownership, use, possession, selection, performance, operation, inspection, condition (including without limitation, latent or other defects, and whether or not discoverable), improvements, removal, return or storage of the Property, except arising while the Property is in the possession of Lessor or its agent.

Upon request of Lessor, Lessee shall assume the defense of all demands, claims, actions, suits and proceedings against Lessor for which indemnity is provided and shall allow Lessor to participate in the defense thereof. Lessor shall be subrogated to all rights of Lessee for any matter which Lessor has assumed obligation hereunder, and may settle any such demand, claim, or action without Lessee's prior consent, and without prejudice to Lessor's right to indemnification hereunder.

At its expense, Lessee shall maintain in force, at all times from shipment of the Property to Lessee until surrender thereof, property damage and risk insurance and liability insurance with such coverage and from such insurance carriers as shall be satisfactory to Lessor. The Property must be insured against all risks which are customarily insured against on the type of property leased hereunder. The amount of Lessee's liability insurance shall not be less than $1,000,000.00. Such insurance policies must name Lessor as an additional insured and lender's loss payee, and provide for ten (10) days advance written notice to Lessor of modification or cancellation. Lessee shall, upon request, deliver to Lessor satisfactory evidence of the insurance coverage. In the event Lessee fails to maintain coverage as provided herein, Lessor may charge a fee for additional monitoring and, at Lessor's option, in addition to any other rights available to Lessor, obtain coverage, and any sum paid therefor by Lessor (including any charges assessed by Lessor for such service) shall be immediately due and payable to Lessor by Lessee.

8. **INCOME TAX INDEMNITY.** Lessee hereby represents, warrants, and covenants to Lessor as follows:

(a) This Lease shall be a lease for federal and state income tax purposes; Lessor shall be treated as the purchaser, owner, lessor, and original user of the Property and Lessee shall be treated as the lessee of the Property for such purposes.

(b) Lessor shall be entitled to depreciation deductions with respect to each item of Property as provided by Section 167(a) of the Internal Revenue Code of 1986, as amended (the "Code"), determined under Section 168 of the Code by using the applicable depreciation method, the applicable recovery period, and the applicable convention, all as may be specified on the applicable Schedule for the Property, and Lessor shall also be entitled to corresponding state depreciation deductions.

(c) For purposes of determining depreciation deductions, the Property shall have an income tax basis equal to Lessor's cost for the Property specified on the applicable Schedule, plus such expenses of the transaction incurred by Lessor as may be included in basis under Section 1012 of the Code, and shall be placed in service (and certified as such by Lessee) by the last business day of the same calendar year in which the Schedule for such Property is executed.

(d) The maximum federal and state income tax rates applicable to Lessor in effect on the date of execution and delivery of a Schedule with respect to an item or items of Property will not change during the lease term applicable to such Property.

If for any reason whatsoever any of the representations, warranties, or covenants of Lessee contained in this Lease or in any other agreement relating to the Property shall prove to be incorrect and (i) Lessor shall determine that it is not entitled to claim all or any portion of the depreciation deductions in the amounts and in the taxable years determined as specified in (b) and (c), above, or (ii) such depreciation deductions are disallowed, adjusted, recomputed, reduced, or recaptured, in whole or in part, by the Internal Revenue Service or applicable state taxing authority (such determination, disallowance, adjustment, recomputation, reduction, or recapture being herein called a "Loss"), then Lessee shall pay to Lessor as an indemnity and as additional rent such amount as shall, in the reasonable opinion of Lessor, cause Lessor's after-tax economic yield (the "Net Economic Return") to equal the Net Economic Return that would have been realized by Lessor if such Loss had not occurred. The amount payable to Lessor pursuant to this section shall be payable on the next succeeding rental payment date after written demand therefor from Lessor accompanied by a written statement describing in reasonable detail such Loss and the computation of the amount so payable.

Further, in the event (i) there shall be any change, amendment, addition, or modification of any provision of applicable state law or of the Code or regulations thereunder or interpretation thereof with respect to the matters set forth in this section with respect to any Property or (ii) if at any time there shall be any change, amendment, addition, or modification of any provision of applicable state law or of the Code or regulations thereunder or interpretation thereof with respect to the maximum applicable federal and state income tax rates as set forth in (d) above, which results in a decrease in Lessor's Net Economic Return, then Lessor shall recalculate and submit to Lessee the modified rental rate required to provide Lessor with the same Net Economic Return as it would have realized absent such change and the Lease shall thereupon automatically be deemed to be amended to adopt such rental rate and values.

9. **INSPECTION AND REPORTS.** Lessor shall have the right, at any reasonable time, to enter on Lessee's premises or elsewhere and inspect the Property and any records and documents regarding its use, maintenance and repair. Lessee shall give Lessor immediate notice and copy of all tax notices, reports, or inquiries, and of all seizure, attachment, or judicial process affecting or relating to the use, maintenance, operation, possession, or ownership of the Property. Upon Lessor's request, but in no event later than thirty (30) days after such request, Lessee shall deliver all information requested by Lessor which Lessor deems reasonably necessary to determine Lessee's faithful performance of the terms hereof. Within 150 days after the close of each fiscal year of Lessee, Lessee shall deliver to Lessor true and complete copies of its financial statements (including, without limitation, a balance sheet, a statement of income and surplus account and a statement of changes in financial position) for the immediately preceding fiscal year, setting forth the corresponding figures for the prior fiscal year in comparative form, all in reasonable detail without any qualification or exception deemed material by Lessor. Such financial statements shall be prepared at least as a review by Lessee's independent certified accountants and, if prepared as an audit, shall be certified by such accountants. Lessee shall also furnish Lessor with any other financial information deemed reasonably necessary by Lessor. Each financial statement submitted by Lessee to Lessor shall be prepared in accordance with

generally accepted accounting principles consistently applied and shall fairly and accurately present the Lessee's financial condition and results of operations for the period to which it pertains.

10. **LESSEE'S REPRESENTATIONS AND WARRANTIES.** Lessee hereby represents, warrants, and covenants that:

(a) Lessee has adequate power and capacity to enter into this Lease, any Schedule, and any other documents required to be delivered in connection with this Lease (collectively, the "Documents"); the Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms; there are no proceedings presently pending or, to the best knowledge of Lessee, threatened against Lessee which will impair its ability to perform under the Lease; and all information supplied to Lessor is accurate and complete.

(b) Lessee's entering into the Lease and leasing the Property does not and will not; (i) violate any judgment, order, or law applicable to the Lease, Lessee or Lessee's organizational documents; or (ii) result in the creation of any lien, security interest or other encumbrance upon the Property, other than as granted hereunder.

(c) All information and representations furnished by Lessee to Lessor concerning the Property are accurate and correct.

(d) All financial data of Lessee or of any consolidated group of companies of which Lessee is a member ("Lessee Group") delivered to Lessor have been prepared in accordance with generally accepted accounting principles applied on a consistent basis with prior periods and fairly present the financial position and results from operations of Lessee, or of the Lessee Group, as of the stated date and period(s). Since the date of the most recently delivered financial data, there has been no material adverse change in the financial or operating condition of Lessee or of the Lessee Group.

(e) If Lessee is a business entity, it is and shall be validly existing and in good standing under laws of the state of its organization, and Lessee shall give written notice to Lessor within 30 days of any termination or revocation of Lessee's existence by its state of organization. Lessee shall not change its state of organization, headquarters or residence without providing prior written notice to Lessor. The persons signing the Documents are acting with all necessary authority and hold the offices indicated below their signatures, which are genuine.

11. **ASSIGNMENT; CHANGE IN CONTROL.** LESSEE SHALL NOT ASSIGN OR IN ANY WAY DISPOSE OF ALL OR ANY OF ITS RIGHTS OR OBLIGATIONS UNDER THIS LEASE OR ENTER INTO ANY SUBLEASE OF ALL OR ANY PART OF THE LEASED PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR. IN CONNECTION WITH THE GRANTING OF SUCH CONSENT AND THE PREPARATION OF NECESSARY DOCUMENTATION, A FEE SHALL BE ASSESSED EQUAL TO ONE PERCENT (1%) OF THE REMAINING BALANCE THEN DUE HEREUNDER PLUS ANY RESIDUAL VALUE OF THE PROPERTY. In the event that Lessor has consented to any sublease of the Property, Lessee hereby assigns and grants to Lessor a security interest in any and all rights under any sublease(s), to secure all obligations to Lessor, and Lessee shall deliver to Lessor the original of such sublease(s).

Lessee shall not consolidate or merge with or into any other entity, liquidate or dissolve, distribute, sell or dispose of all of its ownership interests, properties or assets or any substantial portion thereof other than in the ordinary course of its business, without the prior written consent of Lessor.

LESSEE AGREES THAT LESSOR MAY ASSIGN OR TRANSFER THIS LEASE OR LESSOR'S INTEREST IN THE LEASED PROPERTY WITHOUT NOTICE TO LESSEE. Any assignee of Lessor shall have all of the rights, but none of the obligations, of Lessor under this Lease and Lessee shall not assert against any assignee of Lessor any defense, counterclaim or offset that Lessee may have against Lessor. Lessee acknowledges that any assignment or transfer by Lessor will not materially change Lessee's duties or obligations under this Lease nor materially increase the burdens or risks imposed on Lessee. Lessee shall cooperate with Lessor in executing any documentation reasonably required by Lessor or any assignee of Lessor to effectuate any such assignment.

12. **SURRENDER.** As long as Lessee has provided notice to Lessor in accordance with the Schedule prior to the expiration or termination of the term specified in each Schedule, unless Lessee shall exercise any purchase option granted in connection with such Schedule, Lessee shall, at its risk and expense and according to manufacturer's recommendations, assemble, prepare for delivery, and deliver the applicable Property and all manuals, records, certificates and documents regarding its use, maintenance and repair to any location specified by Lessor within the continental United States. To the extent that any such purchase option specifies that the purchase price shall be the "fair market value" of the Property, the term "fair market value" shall be defined as the value of the Property in continued use. Upon return of the Property any upgrades and improvements shall become the property of Lessor. Any upgrades, parts or improvements may only be removed from the Property if their removal shall not impair the Property's ability to operate according to any manufacturer's and regulatory performance standards and specifications. The Property shall be delivered unencumbered and free of any liens, charges, or other obligations (including delivery expense and sales or use taxes, if any, arising from such delivery) and shall be in good working order, in the same condition, appearance, and functional order as when first leased hereunder, reasonable wear and tear excepted, and in the condition specified or described in the applicable Schedule. At Lessor's request, Lessee shall at Lessee's expense provide Lessor with a written certification by an independent engineer or other recognized expert acceptable to Lessor to the effect that the Property is in the condition required hereunder. In lieu of delivery, Lessor may, at its option, direct Lessee to dispose of all or a portion of the Property in a proper and lawful manner at a recognized disposal site at Lessee's sole cost and responsibility.

13. **DEFAULT.** Time is of the essence under this Lease, and Lessee shall be in default in the event of any of the following ("Event of Default"): (a) any failure to pay when due the full amount of any payment required hereunder, including, without limitation, rent, taxes, liens, insurance, indemnification, repair or other charge; (b) any misstatement or false statement in connection with, or non-performance of any of Lessee's obligations, agreements, or affirmations under or emanating from, this Lease; (c) Lessee's death, dissolution, termination of existence; (d) if any of the following actions or proceedings are not dismissed within sixty (60) days after commencement: Lessee's insolvency, becoming the subject of a petition in bankruptcy, either voluntary or involuntary, or in any other proceeding under federal bankruptcy laws; making an assignment for benefit of creditors; or being named in, or the Property being subjected to a suit for the appointment of a receiver; (e) any default under any agreement between Lessee and Lessor (other than this Lease) or between Lessee and any affiliate of Lessor; (f) any failure to pay, as and when due, any obligation of Lessee, whether or not to Lessor, arising independently of this Lease; (g) any removal, sale, transfer, sublease, encumbrance, seizure or levy of or upon the Property; (h) bankruptcy, insolvency, termination, death, dissolution, or default of any guarantor for Lessee; (i) any actual or anticipated (in Lessor's reasonable discretion) unauthorized revocation, nonrenewal or termination of a letter of credit, surety bond or other instrument issued for the benefit of Lessor as additional security for the obligations of Lessee hereunder; or (j) any unauthorized filing by Lessee of a termination statement for any financing statement filed by Lessor.

14. **REMEDIES.** Upon the occurrence of any Event of Default which continues for more than ten (10) days and at any time thereafter, Lessor shall have all remedies provided by law; and, without limiting the generality of the foregoing and without terminating this Lease, Lessor, at its sole option, shall have the right at any time to exercise concurrently, or separately, without notice to Lessee (unless specifically stated), any one or all of the following remedies:

(a) Request Lessee to assemble the Property and make it available to Lessor at a reasonable place designated by Lessor and put Lessor in possession thereof on demand;

(b) Immediately and without legal proceedings or notice to Lessee, enter the premises, take possession of, remove and accept the Property or render it unusable (any such taking shall not terminate this Lease);

(c) Declare the entire amount of rent and other sums payable hereunder immediately due and payable; however, in no event shall Lessor be entitled to recover any amount in excess of the maximum permitted by applicable law;

(d) Terminate the leasing of any or all items of Property. Such termination shall occur only upon notice by Lessor and only as to such items of Property as Lessor specifically elects to terminate. This Lease shall continue in full force and effect as to any remaining items;

(e) Recover all of the following: (i) any accrued and unpaid rent, plus (ii) the present value of all future rentals reserved in the Lease and contracted to be paid over the unexpired term of the Lease, discounted at the rate of six percent (6%); plus, (iii) the anticipated residual value of the Property as of the expiration of this Lease or any renewal thereof; (iv) any indemnity payment, if then determinable; (v) all commercially reasonable costs and expenses incurred by Lessor in any repossession, recovery, storage, repair, sale, re-lease or other disposition of the Property, including legal expenses and reasonable attorneys' fees plus costs of collection of any amounts owed hereunder, including any collection agency fee; and, (vi) the value of all tax benefits lost to Lessor as a result of Lessee's default or the enforcement by Lessor of any remedy; plus interest on each of the foregoing at a rate of fifteen percent (15.0%) per annum ("Default Interest"); and,

(f) Lessor may, but is not required to, re-lease or sell any or all of the Property at a public or private sale on such terms and notice as Lessor shall deem reasonable. The proceeds of any sale or lease shall be applied in the following order of priorities: (i) to pay all of Lessor's expenses in taking, removing, holding, repairing and disposing of Property, including legal expenses and reasonable attorneys' fees; then (ii) to pay any late charges and interest accrued; then (iii) to pay accrued but unpaid rent together with the anticipated residual value, future rent, interest and all other due but unpaid sums (including any indemnification and sums due under other Leases or agreements in default). Any remaining proceeds will reimburse Lessee for payments which it made to reduce the amounts owed to Lessor in the preceding sentence. Lessor shall keep any excess. If the proceeds of any sale or lease are not enough to pay the amounts owed to Lessor under this Section, Lessee shall pay the deficiency.

No remedy referred to in this paragraph is intended to be exclusive, but shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity.

15. **LESSEE'S WAIVERS.** To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies now or hereafter conferred by statute or otherwise including but not limited to Lessee's rights to: (i) cancel or repudiate this Lease; (ii) reject or revoke acceptance of the Property; (iii) recover damages from Lessor for any breaches of warranty; (iv) claim, grant or permit a security interest in the Property in Lessee's possession or control for any reason; (v) deduct all or part of any claimed damages resulting from Lessor's default, if any, under this Lease; (vi) accept any partial delivery of the Property; (vii) "cover" by making any purchase or lease of or contract to purchase or lease property in substitution for the Property; or (viii) commence legal action against Lessor for specific performance, replevin, sequestration, claim and delivery or the like for the Property.

16. **NOTICES, ATTORNEYS' FEES, GOVERNING LAW AND JURY WAIVER.** All notices shall be mailed or delivered by facsimile transmission or overnight courier to the respective parties at the addresses shown on any Schedule hereto or such other address as a party may provide in writing from time to time. In any interpretation or enforcement of the Lease and any related documents thereto or to the relationship between the parties, Lessee shall pay Lessor's legal expenses and reasonable attorneys' fees, including any incurred before and at trial, on appeal, in any other proceeding or without any litigation being filed. This Lease, and the rights and liabilities of the parties shall be governed by applicable federal law and the laws of the State of Oregon. Any legal action or proceeding with respect to this Lease shall be brought in state court sitting in Portland, Oregon, and, by execution and delivery of this Lease, each of the parties consents to the jurisdiction of such court and waives any defense of lack of jurisdiction or inconvenient forum. Service of process by overnight courier will be sufficient to confer personal jurisdiction over the Lessee. LESSOR AND LESSEE EACH IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE.

17. **SEVERABILITY.** If any of the provisions of this Lease are contrary to, prohibited by, or held invalid under applicable laws, regulations or public policy of any jurisdiction in which it is sought to be enforced, then that provision shall be considered inapplicable and omitted but shall not invalidate the remaining provisions. In no event shall this Lease be enforced in any way which permits Lessor to charge or collect interest in excess of the maximum lawful rate. Should interest collected exceed such rate, Lessor shall refund such excess interest to Lessee. In such event, Lessee agrees that Lessor shall not be subject to any penalties provided by law for contracting for or collecting interest in excess of the maximum lawful rate.

18. **SURVIVAL.** All of Lessor's rights, privileges and indemnities contained herein shall survive the expiration or other termination of the Lease and any Schedules, and the rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by, Lessor, its successors and assigns.

19. **LESSOR'S DISCLAIMERS; <u>DISCLAIMERS OF WARRANTIES</u>.** Lessor has obtained the Property based on specifications furnished by the Lessee. Lessor does not deal in property of this kind or otherwise hold itself or its agents out as having knowledge or skill peculiar to the Property. Lessee acknowledges that it has relied on its own skill and experience in selecting property suitable to the Lessee's particular needs or purposes and has neither relied upon the skill or judgment of Lessor nor believes that Lessor or its agents possess any special skill or judgment in the selection of Property for Lessee's particular purposes. Further, Lessee has not notified Lessor of Lessee's particular needs in using the Property.

Lessee understands and agrees that neither the supplier(s) nor any salesman or any agent of the supplier(s) is an agent of Lessor. No salesman or agent of supplier is authorized to waive or alter any term or condition of this Lease, and no representation as to the Property or any other matter by the supplier shall in any way affect Lessee's duty to pay the rent and perform its obligations as set forth in this Lease. Lessor shall not be liable to Lessee for any incidental, consequential, or indirect damages or for any act, neglect, omission, breach or default by any third party.

**LESSOR ASSUMES NO RESPONSIBILITY FOR AND MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE TITLE, DESIGN, COMPLIANCE WITH SPECIFICATIONS, CONDITION, QUALITY, WORKMANSHIP, OR THE SUITABILITY, SAFETY, ADEQUACY, OPERATION, USE OR PERFORMANCE OF THE PROPERTY OR AS TO ITS MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR AS TO PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT. ANY DELAY IN DELIVERY SHALL NOT AFFECT THE VALIDITY OF THIS LEASE.**

**LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY REPRESENTATION, CLAIM, BREACH OF WARRANTY, EXPENSE OR LOSS DIRECTLY OR INDIRECTLY CAUSED BY ANY PERSON, INCLUDING LESSOR, OR IN ANY WAY RELATED TO THE PROPERTY.**

20. **ENTIRE AGREEMENT, WAIVERS, SUCCESSORS, NOTICE.** This Lease and any Schedule and associated documents expressly referring hereto (each, a "Transaction") contain the entire agreement of the parties and shall not be qualified or supplemented by course of dealing. However, in any case where the Lessor takes an assignment from a vendor of its security interest in the same Property, the terms of the Transaction shall be incorporated into the assigned agreement and shall prevail over any inconsistent terms therein but shall not be construed to create a new contract. No waiver or modification by Lessor of any of the terms or conditions hereof shall be effective unless in writing signed by an officer of Lessor. No waiver or indulgence by Lessor of any default or deviation by Lessee of any required performance shall be a waiver of Lessor's right to subsequent or other full and timely performance. This Lease shall be binding on the

parties hereto and their respective successors and assigns and shall inure to the benefit of such successors and assigns. Paragraph headings shall not be considered a part of this Lease. If any of the executed Documents are delivered to Lessor by facsimile transmission, such Documents (and signatures thereon) shall be treated as, and have the same force and effect as, originals. Lessee shall also promptly execute and deliver to Lessor such further documents and take further action as Lessor may request to more effectively carry out the intents and purposes of this Lease.

<u>Under Oregon law, most agreements, promises and commitments made by Lessor after October 3, 1989, concerning loans and other credit extensions which are not for personal, family or household purposes or secured solely by the Lessee's residence must be in writing, express consideration and be signed by Lessor to be enforceable.</u>

BY INITIALING THIS SECTION, LESSEE ACKNOWLEDGES THAT LESSEE HAS READ THE ABOVE PARAGRAPHS UNDER SECTION 19, LESSOR'S DISCLAIMERS, AND SECTION 20, ENTIRE AGREEMENT, AND FULLY UNDERSTANDS THEIR CONTENT.

INITIALED: _____

**21. POWER OF ATTORNEY.** LESSEE HEREBY AUTHORIZES AND APPOINTS LESSOR AS ITS ATTORNEY-IN-FACT TO COMPLETE AND EXECUTE IN LESSEE'S NAME AND TO MAKE NON-MATERIAL AMENDMENTS (INCLUDING COMPLETING AND CONFORMING THE DESCRIPTION OF THE PROPERTY (INCLUDING SERIAL NUMBERS)) ON ANY DOCUMENT IN CONNECTION WITH THIS AGREEMENT (INCLUDING ANY DOCUMENT NECESSARY FOR PROCESSING ANY VEHICLE CERTIFICATE OF TITLE) AND TO OBTAIN, ADJUST AND SETTLE ANY INSURANCE REQUIRED BY THIS AGREEMENT AND TO ENDORSE ANY DRAFTS IN CONNECTION WITH SUCH INSURANCE.

IN WITNESS WHEREOF, Lessor and Lessee have each caused this Master Lease Agreement to be duly executed as of the day and year first above written.

U.S. Bancorp Equipment Finance, Inc. - Vendor Finance Group
(LESSOR)

By: _____
An Authorized Officer Thereof

5/03

U S Bancorp
Equipment Finance, Inc.

Young Construction & Paving, L.L.C.
(LESSEE)

By: _____
Jeffrey D. Young
Member

By: _____
Gordon T. Young
Member

ADDRESS FOR ALL NOTICES TO LESSOR:
PO Box 230789
Portland, OR 97281-0789



**SCHEDULE TO MASTER LEASE AGREEMENT**

Schedule Number 648045A-022-30717-001

THIS SCHEDULE is made as of July 06, 2005 by and between U.S. Bancorp Equipment Finance, Inc. - Vendor Finance Group ("Lessor"), having its principal place of business at PO Box 230789, Portland, OR 97281-0789, and Young Construction & Paving, L.L.C. ("Lessee"), having its business located at PO Box 407, 16194 E. Lincoln Hwy, Morrison, IL 61270, pursuant to the Master Lease Agreement dated as of July 06, 2005 between Lessee and Lessor (the "Lease"), the terms of which (including the definitions) are incorporated herein. The terms of the Lease and this Schedule together shall constitute a separate instrument. Capitalized terms used but not defined herein are used with the respective meanings specified in the Lease. If any terms hereof are inconsistent with the terms of the Lease, the terms hereof shall prevail.

**LESSOR AND LESSEE HEREBY COVENANT AND AGREE AS FOLLOWS:**

1. The following specified equipment (the "Property") is hereby made and constituted Property for all purposes pursuant to the Lease:

One (1) Komatsu D155AX-5 Crawler Dozer

**TOGETHER WITH ALL REPLACEMENTS, PARTS, REPAIRS, ADDITIONS, ACCESSIONS AND ACCESSORIES INCORPORATED THEREIN OR AFFIXED OR ATTACHED THERETO AND ANY AND ALL PROCEEDS OF THE FOREGOING, INCLUDING, WITHOUT LIMITATION, INSURANCE RECOVERIES.**

2. The Property will be installed or stored at the following address:

16194 E. Lincoln Hwy, Morrison, IL 61270 County: Whiteside

3. The cost of the Property ("Property Cost") is: $212,000.00

Please Initial Here: _____

4. Sales Tax is $13,250.00. Such amount shall be financed over the term hereof.

5. The total amount financed pursuant to this Schedule is: $225,250.00.

6. Lessee shall owe basic rental payments (plus applicable sales/use taxes) in Advance payable as follows: Thirty Six (36) rental payments in the amount of $5,680.60 each. The first such payment shall be due upon acceptance (the "Equipment Acceptance Date"). Each subsequent payment shall be due on the Payment Due Day (as defined in the paragraph below) corresponding to the day of the month of the Equipment Acceptance Date

**PAYMENT DUE DAY.** Payment Due Days are on the 1st, 10th and 20th of each month. Acceptance or Rental Commencement Dates occurring on the 26th through the 5th day of a month shall have a Payment Due Day on the First of each month. Acceptance or Rental Commencement Dates occurring on the 6th through the 15th day of a month shall have a Payment Due Day on the 10th of each month. Acceptance or Rental Commencement Dates occurring on the 16th through the 25th day of a month shall have a Payment Due Day on the 20th of each month.

7. **PAYMENT ADJUSTMENT.** As of the date Lessor disburses funds (the 'Adjustment Date'), the monthly rental payments due hereunder shall be recalculated based upon increases in the spot rate for 36-month U.S. Bancorp's Funds Transfer Pricing Rate/Cost of Funds (the 'Spot Rate') from the date hereof until the Adjustment Date. If, on the Adjustment Date, the Spot Rate is greater than 4.03%, then the monthly rental payments due hereunder shall be increased to reflect the actual rate. Thereafter, the monthly rental payments shall remain fixed during the Term hereof.

**EXHIBIT 2**

8. **LATE CHARGE.** If any installment of rent shall not be received by Lessor within ten (10) days after such amount is due, Lessee shall pay to Lessor a late charge equal to the lesser of the maximum amount allowed by law or Five (5) percent of such overdue amount.

9. **DEPRECIATION.** Lessor shall be entitled to modified accelerated cost recovery depreciation based on 100% of Property Cost using the 200% declining balance method, switching to straight line, for Five (5) year Property, and zero salvage value.

10. **TITLE PASSAGE** a. As long as no event of default has occurred and is continuing under the Lease, Lessee shall have the option, to purchase all, but not part, of the Property at the end of the Term or any renewal thereof (the "Option"). The Option may only be exercised by Lessee by written notice of such exercise to Lessor. If Lessee intends to return the Property instead of exercising the Option, Lessee shall give written notice to Lessor. Either notice must be received by Lessor not later than one hundred eighty (180) days prior to the last day of the Term. Payment of the Purchase Price must be received by Lessor on or before the last day of the Term.

b. The purchase price (the "Purchase Price") shall be equal to the then fair market value (the "Fair Market Value") of the Property determined as hereinafter provided, not to exceed 25% (which amount Lessor and Lessee estimate will be the fair market value of the Property at the end of the Term).

c. The Fair Market Value of the Property at the time of such exercise shall be mutually agreed upon by Lessor and Lessee. In the event such parties cannot reach an agreement thereon after good faith negotiation, the Fair Market Value shall be the value determined by an appraisal of the Property made by a qualified and reputable independent equipment appraiser certified for the type of Property being appraised, assuming the Property is in as good operating condition and appearance as when initially leased hereunder, ordinary wear and tear excepted. The appraiser shall be selected by Lessor, and the cost of the appraisal shall be paid by Lessee.

d. Upon receipt of payment of the Purchase Price together with any and all applicable sales or other taxes due in connection therewith, and any and all remaining sums or other amounts payable under this Schedule, Lessor shall transfer all its right, title and interest in and to the Property to Lessee. The Property shall be transferred "As Is" and "Where Is" without any express or implied representations or warranties.

e. Should Lessee fail to either exercise the Option or give notice of the return of the property as provided above, then Lessor, at its sole option, shall have the right to: a) declare the Option terminated and demand return of the Property; or, b) extend the Term for an additional six (6) months (the "Extended Term"). Should Lessor elect to extend the Term, Lessee shall be irrevocably obligated to remit monthly rent for the period beginning on the day immediately succeeding the last day of the Term (the "Holdover Date") and ending at the end of the sixth (6th) month thereafter. A payment of rent shall be due on the Holdover Date and on the same day of each consecutive month thereafter. Each payment of rent during any Extended Term shall be in the amount of the basic monthly rent for the last month of the Term, in accordance with the provisions of this Schedule. All Lessee's other obligations under the Lease shall remain in full force and effect for so long as Lessee shall continue to possess the Property. Upon the expiration of each Extended Term, Lessor, at its sole option, shall have the right to: a) permit Lessee to exercise the Option in accordance with its terms; b) declare the Option terminated and demand return of the Property; or, c) extend the Term for an additional six (6) month Extended Term. Any and all rental payments pursuant to this Paragraph shall be deemed for all intents and purposes to be payments for possession and use of the Property after the expiration of the Term, and shall not be credited to any other obligation of Lessee to Lessor. Lessor's invoicing and/or accepting any such payment shall not give rise to any right, title or interest of Lessee other than to possession and use of the Property during the period to which such rent applies in accordance with this Paragraph. The aforesaid right to charge Lessee rent for possession and use of the Property is not in limitation or derogation of any of Lessor's rights pursuant to the Lease.

f. U.S. Bancorp Equipment Finance, Inc. has assigned its rights (but not its obligations) regarding the sale of the Property herein to USBEF Exchange Co. as part of an IRC Section 1031 exchange. This assignment does not affect the lease contract between Lessee and U.S. Bancorp Equipment Finance, Inc. and has no effect on Lessee's ownership, rights or obligations hereunder. If Lessee decides to purchase this Property, it shall make its check payable to "USBEF Exchange Co., Account" instead of U.S. Bancorp Equipment Finance, Inc.

**11. MAINTENANCE, USE, AND RETURN PROVISIONS.** The Property shall be maintained at all times structurally sound, within manufacturer's accepted tolerances in all material respects, and shall be in compliance with such maintenance and repair standards and procedures as are set forth in the manufacturer's manual for such Property.

Each engine shall be able to pull its full, rated load under normal operating conditions without excessive exhaust or oil leakage; there shall be no water or excess metal debris or other related materials in the oil supply nor oil in the cooling system. Each engine shall be in efficient operating condition as determined by an engine oil analysis, general health test or similar evaluation procedure performed by the engine manufacturer, or its representative, at Lessee's expense. All hydraulic cylinders, pumps and hoses shall be in operating condition and free of leaks under normal operating pressure.

The rental payable under the Lease is based on average monthly usage of the Property of 150 hours per month as determined by the hour meter attached to each unit of Property. If such meter becomes inoperable, Lessee shall immediately repair such meter and shall notify Lessor immediately of such event and of the hours of usage during the time such meter was inoperable. For each hour of use in excess of an average of 150 hours per month, Lessee shall pay to Lessor additional rent at the pro-rated amount of the average monthly scheduled rental. Lessee shall pay such additional rent on the final day of the Term.

Lessee shall maintain the Property in safe and effective operating condition to handle fully-rated loads, keep the Property clean, use and operate the Property within its rated capacity, and notify Lessor immediately of any accident affecting the Property. Engines, hydraulics, and transmissions shall operate properly at fully-rated loads. Transmissions shall shift properly at rated loads and speeds. Mechanical drive trains, differentials and final drives shall be in good condition and operate quietly without vibrations or leaks. All ground engaging tools (buckets, blades, rippers) and cabs, canopies, enclosures, lights and other accessories shall be in good condition and appearance. Lessee shall initiate and retain written records of preventive maintenance and repairs indicating date and hour-meter readings, verified by parts invoices. Lessee shall utilize a lube oil sampling test program provided by the oil supplier or independent laboratory, retain written records of such reports and promptly perform any repairs indicated as required by such reports. Copies of all reports shall be provided to Lessor on request.

Upon termination of the Lease, the Property shall be returned with frame, structural members, and accessories structurally sound, without breaks or cracks. Tires shall be returned in recappable condition, and track components shall have at least 50% wear remaining. All components shall have been recently serviced, following the manufacturer's written operating and maintenance procedures indicated in operator's and service manuals furnished with each piece of Property, and shall have had periodic adjustments and inspections performed, and all lubricants and hydraulic fluids recently changed.

If any item of Property is originally equipped with tires, each such item shall be returned with all tires installed and operable thereon, being of the same type and manufacturer (i.e. matched) and with each having 50%, or the manufacturer's designated half-life or more, tread-life remaining. Lessee shall be charged (pro-rated) for any portion of tread-life that is worn beyond the designated half-life on each tire. The charge will be the cost as determined by the manufacturer, or its representative, that would replace the tread to the specified 50% half-life tread depth.

If any item of Property includes a crawler undercarriage, such item shall be returned with at least 50% remaining life, as designated by the manufacturer, on the undercarriage and tracks. Lessee shall be charged (pro-rated) for any portion of undercarriage or track life that is worn beyond the designated 50% remaining life. The charge shall be the cost as determined by the manufacturer, or its representative, that would replace the undercarriage or tracks to the specified 50% remaining life.

As of the commencement of the Lease, Lessee certifies that the One (1) Komatsu D155AX-5 Crawler Dozer had _5516_ hours of usage showing on its meter.



Lessee's Initials

12. If the Property is not placed in service (and certified as such by Lessee's execution of a Delivery and Acceptance Certificate) by the last business day of the same calendar year in which this Schedule is executed, Lessor shall have the right to readjust the amount of the monthly rental payment to compensate for the resulting change in Lessor's tax benefits.

IN WITNESS WHEREOF, the Lessor and the Lessee have each caused this Schedule to be duly executed as of the day and year first above written.

**U.S. Bancorp Equipment Finance, Inc. - Vendor Finance Group**

By: _____
An Authorized Officer Thereof

12/04

U.S Bancorp
equipment finance,
Inc.

**Young Construction & Paving, L.L.C.**

By: _____
Jeffrey D. Young
Member

By: _____
Gordon T. Young
Member

ADDRESS FOR ALL NOTICES:
PO Box 230789
Portland, OR 97281-0789

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER [optional]
UCC Filing Desk - (503) 443-9822
B. SEND ACKNOWLEDGMENT TO: (Name and Address)

US CORPORATE SERVICES / CSC
12750 SW Pacific Highway, Suite 201
Tigard, OR 97223

L P1567O4P8  8-3-05

RECEIVED
SECRETARY OF STATE
UNIFORM COMM CODE DIV.
ACKNOWLEDGEMENT COPY
2005 JUL 28 AM 11:04

UCU107/29/05 02:4315
20.00 MU
SOSIL 11:33  10048648 FS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names
1a. ORGANIZATION'S NAME: YOUNG CONSTRUCTION & PAVING, L.L.C.
1c. MAILING ADDRESS: PO BOX 407    CITY: MORRISON    STATE: IL    POSTAL CODE: 61270    COUNTRY: USA
1d. TAX ID #: SSN OR EIN   ADD'L INFO RE ORGANIZATION DEBTOR
1e. TYPE OF ORGANIZATION: LLC
1f. JURISDICTION OF ORGANIZATION: ILLINOIS
1g. ORGANIZATIONAL ID #: 00128619

3. SECURED PARTY'S NAME
3a. ORGANIZATION'S NAME: U.S. BANCORP EQUIPMENT FINANCE, INC.
3c. MAILING ADDRESS: PO BOX 230789    CITY: PORTLAND    STATE: OR    POSTAL CODE: 97281    COUNTRY: USA

4. This FINANCING STATEMENT covers the following collateral:
One (1) Komatsu D155AX-5 Crawler Dozer

Together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed or attached thereto and any and all proceeds of the foregoing, including without limitation, insurance recoveries.

ANY RECEIPT OF PROCEEDS OF THE COLLATERAL BY ANOTHER SECURED PARTY VIOLATES THE RIGHTS OF SECURED PARTY.

8. OPTIONAL FILER REFERENCE DATA
648045A-022-30717-001    REF# 472043

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

COPY

EXHIBIT 3



**Equipment Finance, Inc.**

**CERTIFICATE OF AUTHORITY**
**(LEASE/LOAN)**

I/WE HEREBY CERTIFY to U.S. Bancorp Equipment Finance, Inc. - Vendor Finance Group (the "Creditor") that: a) I/we am/are the person(s) authorized to certify on behalf of Young Construction & Paving, L.L.C., a business entity (the "Company") organized and maintaining good standing under the laws of the State of Illinois; b) the following is a true and correct copy of certain Resolutions duly adopted or voted by the Board of Directors, Members or Managers, as appropriate, of the Company; c) I/we have placed a copy of such Resolutions in the official records of the Company; d) such Resolutions have not been rescinded, amended, or otherwise altered or repealed; and e) such Resolutions are now in full force and effect and are in full compliance with the formation documents of the Company, as such may have been amended. The Company has resolved the following:

1) That the Company from time to time leases personal property and/or borrows money or otherwise obtains credit from Creditor and that the entire amount of leasing, borrowing or credit under this resolution at any one time, whether direct or indirect, absolute or contingent, shall be unlimited;

2) That any one of the officers, agents, members, or managers designated below is hereby authorized to borrow money and to obtain credit and other financial accommodations (including the leasing of personal property) for the Company; and to execute and deliver on behalf of the Company any and all documentation required in connection therewith in such form and containing such terms and conditions as the person(s) executing such documents shall approve as being advisable and proper and in the best interests of the Company; and that the execution thereof by such person(s) shall be conclusive evidence of such approval; and, as security for the Company's obligations to Creditor to pledge, assign, transfer, mortgage, grant a security interest in, hypothecate, or otherwise encumber any and all property of the Company, whether tangible or intangible; and to execute and deliver all instruments of assignment and transfer;

3) That any officer, member, manager, agent or employee of the Company is hereby further authorized to take any and all such other actions as may be necessary to carry out the intent and purposes of these Resolutions, and that any and all actions taken by such person(s) to carry out such intent and purposes prior to the adoption of these Resolutions are hereby ratified and confirmed by, and adopted as the action of, the managers of the Company; and

4) That these Resolutions shall constitute a continuing authority to the designated person or persons to act on behalf of the Company, and the powers and authority granted herein shall continue until revoked by the Company and formal written notice of such revocation shall have been given to Creditor. These Resolutions do not supersede similar prior resolutions given to Creditor.

I/WE HEREBY FURTHER CERTIFY that pursuant to the formation documents and any other appropriate documents of the Company as may be necessary, the following named person(s) have been properly designated and appointed to the position(s)/office(s) indicated below, that such person(s) continue to hold such position(s)/office(s) at the time of execution of the documentation for the transaction(s) with Creditor, and that the signature(s) of such person(s) shown below are genuine.

| OFFICE | NAME | SIGNATURE |
|---|---|---|
| Member | Jeffrey D. Young | |
| Member | Gordon T. Young | |

I/WE HEREBY FURTHER CERTIFY that, pursuant to the formation documents of the Company, and any other appropriate documents of the Company as may be necessary, I/we have the power and authority to execute this Certificate on behalf of the Company, and that I/we have so executed this Certificate on the _20_ day of _Jul_, 20_05_. A copy of this Certificate, which is duly signed and which is received by facsimile transmission ("fax"), shall be deemed to be of the same force and effect as the original.

By: _____
Gordon T. Young
Member

By: _____
Jeffrey D. Young
Member

6/02

ADDRESS FOR ALL NOTICES:
PO Box 230789
Portland, OR 97281-0789

**EXHIBIT 4**



**DELIVERY AND ACCEPTANCE CERTIFICATE**

Schedule Number 648045A-022-30717-001

This Certificate is delivered to and for the benefit of Lessor and pertains to the following personal property (the "Property") which is the subject of Schedule Number 648045A-022-30717-001, dated as of July 06, 2005, to Master Lease Agreement, dated as of July 06, 2005, between U.S. Bancorp Equipment Finance, Inc. - Vendor Finance Group as Lessor and Young Construction & Paving, L.L.C. as Lessee (the "Lease"):

One (1) Komatsu D155AX-5 Crawler Dozer (Serial Number 70064).

**TOGETHER WITH ALL REPLACEMENTS, PARTS, REPAIRS, ADDITIONS, ACCESSIONS AND ACCESSORIES INCORPORATED THEREIN OR AFFIXED OR ATTACHED THERETO AND ANY AND ALL PROCEEDS OF THE FOREGOING, INCLUDING, WITHOUT LIMITATION, INSURANCE RECOVERIES.**

To the extent that the above description has been altered by us or differs from the Property description set forth in the Lease (including, but not limited to, changes to model or serial numbers), we certify that such alterations or differences are accurate and we acknowledge that, based upon this certification: 1) the Lease is hereby amended to reflect the above Property description; and 2) Lessor is hereby authorized to file amendment(s) to any Financing Statements filed under the Uniform Commercial Code in connection with the Lease, provided that all such amendments are consistent with the above Property description.

**WE HEREBY CERTIFY AND ACKNOWLEDGE THAT:** a) the Property has been delivered to us; b) any necessary installation of the Property has been fully and satisfactorily performed; c) after full inspection thereof, we have accepted the Property for all purposes as of the date hereof; d) Lessor has fully and satisfactorily satisfied all its obligations under the Lease; e) any and all conditions to the effectiveness of the Lease or to our obligations thereunder have been satisfied; f) we have no defenses, set-offs or counterclaims to any such obligations; g) the Lease is in full force and effect; and, h) no Event of Default has occurred under the Lease.

**WE HEREBY REPRESENT AND WARRANT THAT:** a) any right we may have now or in the future to reject the Property or to revoke our acceptance thereof has terminated as of the date of hereof; b) we hereby waive any such right by the execution hereof; c) the date of this Certificate is the earliest date upon which the certifications, acknowledgments, representations and warranties made herein could be correctly and properly made. We hereby acknowledge that Lessor is relying on this Certificate as a condition to making payment for the Property.

IN WITNESS WHEREOF, we have executed this Certificate as of the ___20___ day of ___July___, 20_05_.

**DO NOT SIGN UNLESS PROPERTY HAS BEEN DELIVERED AND YOU ARE ACCEPTING IT AFTER DELIVERY.**

After signing and dating, please return to:

U.S. Bancorp Equipment Finance, Inc. - Vendor Finance Group
13010 S. W. 68th Parkway
Portland, OR 97223

Young Construction & Paving, L.L.C.

By: _____
Jeffrey D. Young
Member

By: _____
Gordon T. Young
Member

3/05

**EXHIBIT 5**



**Equipment Finance, Inc.**

**GUARANTY**

1. In order to induce U.S. Bancorp Equipment Finance, Inc. - Vendor Finance Group ("Creditor") and any entity affiliated with or related to Creditor to enter into one or more financing arrangements ("Transaction") with, or otherwise directly or indirectly make financing or property available to Young Construction & Paving, L.L.C. (the "Obligor"), and/or to induce Creditor to grant to Obligor such renewals, extensions, forbearances, releases of collateral or other relinquishments of rights, whether in connection with the Transaction(s) or otherwise, as Creditor may in its sole discretion deem advisable, and in consideration of any agreements heretofore or hereafter entered into between Creditor and Obligor (any and all such leases, loan agreements, notes, security agreements, pledges, and assignments, together with any and all schedules and riders thereto and any and all other agreements executed and delivered by Obligor in connection therewith, being hereinafter called the "Agreements"), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, THE UNDERSIGNED ("GUARANTOR"), INTENDING TO BE LEGALLY BOUND, HEREBY JOINTLY AND SEVERALLY GUARANTEES THE FULL, PROMPT, COMPLETE AND FINAL PAYMENT AND PERFORMANCE OF ALL THE OBLIGOR'S OBLIGATIONS PURSUANT TO THE AGREEMENTS OR IN ANY WAY ARISING THEREFROM AND ANY AND ALL OTHER OBLIGATIONS AND LIABILITIES OF OBLIGOR TO CREDITOR, WHETHER NOW IN EXISTENCE OR ARISING HEREAFTER, DIRECT OR INDIRECT, CONTINGENT OR ABSOLUTE, MATURED OR UNMATURED, SECURED OR UNSECURED, AND HOWEVER CONTRACTED OR ARISING (ALL SUCH OBLIGATIONS AND LIABILITIES BEING HEREINAFTER CALLED THE "OBLIGATIONS").

2. Guarantor hereby promises to pay Creditor when due, on demand, all indebtedness of any kind or nature emanating from the Agreements (including, without limitation, if an event of default shall occur under the Agreements, payment on demand of all unpaid sums to become due under the defaulted Agreements for the entire term thereof), whether now or hereafter arising; and Guarantor agrees to indemnify and hold Creditor harmless from and against any and all losses, liabilities and costs caused by or arising from (in any way, directly or indirectly) any failure of Obligor to fully, promptly and completely satisfy the Obligations. "Losses, liabilities and costs" shall include (without limitation) all obligations, claims, demands, judgments, costs and expenses of whatever kind or nature (including, without limitation, attorneys' fees). Time is of the essence with regard to the performance of Guarantor's obligations hereunder.

3. In enforcing this Guaranty, Creditor shall not be required to (i) present for payment any evidence of the Obligations (known as "presentment" or "presentment for payment"); (ii) give notice that amounts due have not been paid (known as "notice of dishonor"); or (iii) obtain an official certification of nonpayment (known as "protest") or give Guarantor notice of any such "protest;" and Guarantor hereby waives presentment, presentment for payment, notice of dishonor, protest and notice of protest, and notice of acceptance hereof.

4. Guarantor hereby consents and agrees that without any further notice to, or assent by Guarantor, the liability of Obligor or any other guarantor of the Obligations may from time to time, in whole or in part, be amended, including, without limitation, extended, renewed, accelerated, supplemented, settled, assigned, assumed or released, in Creditor's sole discretion, and that any collateral for any of the Obligations or for any guaranty thereof (including this Guaranty) may from time to time, in whole or part, be exchanged, sold, released or surrendered in Creditor's sole discretion. No such amendment, exchange, sale, release or surrender shall in any way impair, affect or release the liability of Guarantor or constitute a waiver of any of Creditor's rights hereunder.

5. This Guaranty is unlimited, absolute, irrevocable and unconditional and shall continue in full force and effect until all the Obligations shall have been fully, completely and finally satisfied and paid. The obligations of Guarantor hereunder shall continue and survive the repossession of any property leased pursuant to the Agreements, or any property in which Creditor has a security interest securing any of the Obligations, whether or not any such repossession constitutes an "election of remedies" against the Obligor or any other person. Guarantor agrees to be obligated hereunder notwithstanding any termination of the Agreements in whole or part by operation of law or any unenforceability or invalidity of the Agreements for any reason whatsoever. The obligations of the Guarantor shall not be subject to any abatement, setoff, defense or counterclaim for any cause whatsoever. Guarantor's liability hereunder is joint and several with any other guarantor of the Obligations, whether such guarantor executes this document or any other guaranty document. This Guaranty is in addition to, and not in limitation or derogation of, any and all other guaranties of the Obligations executed by any guarantor. In the event of any conflict between the provisions of this Guaranty and those of any other guaranty, the provisions of this Guaranty shall govern.

6. Creditor may proceed directly and in the first instance against any Guarantor or combination of Guarantors and have its remedy hereunder without first being obliged to resort to any other right or remedy or security for any of the Obligations. If there shall be any securities for any of the Obligations, or for the obligations of Guarantor hereunder, or for the obligations of any other guarantor of any of the Obligations, Creditor may proceed against and/or enforce any or all of such securities in whatever order it may, in its sole discretion, deem appropriate. Any amount(s) received by Creditor from whatever source and applied by it to any of the Obligations shall be applied in such order of application as Creditor shall, in its sole discretion, elect.

7. Notwithstanding any provision hereof or any provision of any of the Agreements, or any presumption of applicable law or principle of legal construction to the contrary: (i) nothing shall discharge or satisfy Guarantor's obligations hereunder except full, complete and final payment and satisfaction of all the Obligations and all indebtedness and indemnities owed hereunder; and (ii) Guarantor hereby waives any and all defenses to its obligations hereunder including, without limitation, any defense arising by reason of any cessation of the Obligor's business or any bankruptcy, insolvency or business failure of the Obligor or any other person. Each and every waiver made herein by Guarantor is and shall be construed as an absolute, irrevocable and unconditional waiver of the right waived. Payments received by Creditor from or on behalf of Obligor shall be solely for the benefit of Creditor and shall not benefit Guarantor in any way. Guarantor acknowledges that Guarantor is not and shall not be construed as a "Creditor" of Obligor by virtue of this Guaranty.

8. Within thirty (30) days after Creditor's request, Guarantor shall deliver all information requested by Creditor which Creditor deems reasonably necessary to determine Guarantor's current financial condition.

9. Guarantor hereby represents and warrants to Creditor that all information concerning such Guarantor, including (without limitation) financial statements and other financial information furnished to Creditor in connection with the Agreements, was true, complete and accurate as of the date of delivery thereof to Creditor, and all such information remains true, complete and accurate, and there has been no material adverse change in Guarantor's financial condition as of the date of the most recently delivered financial data. In the event of any breach of Guarantor's representations and warranties herein or any material adverse change in the financial condition of Guarantor, upon the request of Creditor, Guarantor shall promptly furnish to Creditor such additional security for the performance of Guarantor's obligations hereunder as Creditor may reasonably request. Guarantor shall not transfer all or substantially all of its assets without the prior written consent of Creditor. A default hereunder shall be a default under the Agreements.

10. No notice of termination of this Guaranty shall be effective unless and until such notice shall be in writing and executed by Guarantor and shall have been received by Creditor, provided, however, that in the event of such notice, this Guaranty shall continue in full force and effect with regard to all Obligations created, existing or arising prior to the date of such receipt. No modification hereof or amendment hereto and no waiver of any term or provision hereof shall be

**EXHIBIT 6**

valid unless in writing and signed by an authorized officer of Creditor. No delay or failure on the part of Creditor in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Creditor of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. No action of Creditor permitted hereunder shall invalidate or in any way impair this Guaranty. No waiver of any right or remedy hereunder shall constitute a waiver of any other or further right or remedy hereunder.

11. Without any further notice to, or assent by Guarantor, this Guaranty may be assigned by Creditor and reassigned, in the sole discretion of Creditor or its assignee. As used herein, the term "Creditor" includes Creditor and any successor or assign of Creditor. This Guaranty shall be binding upon Guarantor's heirs, successors, representatives, and assigns.

12. Guarantor represents and warrants that this Guaranty is intended to be legal, valid, binding and enforceable in accordance with its terms. Whenever possible, each term and provision of this Guaranty shall be interpreted so as to be effective and to effectuate its intent under applicable law. If any of the provisions of this Guaranty are contrary to, prohibited by, or held invalid under applicable laws, regulations or public policy of any jurisdiction in which it is sought to be enforced, then that provision shall be considered inapplicable and omitted but shall not invalidate the remaining provisions. If this executed Guaranty is delivered to Creditor by facsimile transmission, such document (and any signature thereon) shall be treated as, and have the same force and effect as, an original.

13. In any dispute arising hereunder, Guarantor shall pay Creditor's costs and expenses, including reasonable attorneys' fees and costs incurred in connection herewith and/or arising under the Agreements, including any incurred prior to commencement of a suit, prior to or at trial, on appeal or in any other proceeding. This Guaranty shall be governed by and construed in accordance with the laws of the State of Oregon, and service of process by certified mail, return receipt requested, or overnight courier will be sufficient to confer personal jurisdiction over Guarantor for purposes of litigating any actions arising hereunder. Venue shall be in Portland, Oregon, at Creditor's option. This Guaranty shall take effect as a sealed instrument. GUARANTOR AND CREDITOR EACH IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS GUARANTY.

14. In connection with this Guaranty and the Transaction(s) with the Obligor, any Guarantor who is an individual confirms his/her instruction that Creditor obtain a credit report on him/her self, and further authorizes Creditor to obtain such a credit report for purposes of reviewing and/or considering additional financing arrangements with the Obligor.

IN WITNESS WHEREOF, the undersigned has caused this Guaranty to be duly executed and delivered as of July 06, 2005.

WITNESS
*Gabriel Beltran*
Signature

Print Name: Gabriel Beltran
Address: 3425 Raider Dr.
Hurst, TX 76053

GUARANTOR'S SIGNATURE MAY NOT BE WITNESSED BY GUARANTOR'S SPOUSE OR OTHER FAMILY MEMBER

By: *[signature]*
Gordon T. Young

3/05

ADDRESS FOR ALL NOTICES TO CREDITOR:
PO Box 230789
Portland, OR 97281-0789


**usbancorp**
Equipment Finance, Inc.

# GUARANTY

1. In order to induce U.S. Bancorp Equipment Finance, Inc. - Vendor Finance Group ("Creditor") and any entity affiliated with or related to Creditor to enter into one or more financing arrangements ("Transaction") with, or otherwise directly or indirectly make financing or property available to Young Construction & Paving, L.L.C. (the "Obligor"), and/or to induce Creditor to grant to Obligor such renewals, extensions, forbearances, releases of collateral or other relinquishments of rights, whether in connection with the Transaction(s) or otherwise, as Creditor may in its sole discretion deem advisable, and in consideration of any agreements heretofore or hereafter entered into between Creditor and Obligor (any and all such leases, loan agreements, notes, security agreements, pledges, and assignments, together with any and all schedules and riders thereto and any and all other agreements executed and delivered by Obligor in connection therewith, being hereinafter called the "Agreements"), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, THE UNDERSIGNED ("GUARANTOR"), INTENDING TO BE LEGALLY BOUND, HEREBY JOINTLY AND SEVERALLY GUARANTEES THE FULL, PROMPT, COMPLETE AND FINAL PAYMENT AND PERFORMANCE OF ALL THE OBLIGOR'S OBLIGATIONS PURSUANT TO THE AGREEMENTS OR IN ANY WAY ARISING THEREFROM AND ANY AND ALL OTHER OBLIGATIONS AND LIABILITIES OF OBLIGOR TO CREDITOR, WHETHER NOW IN EXISTENCE OR ARISING HEREAFTER, DIRECT OR INDIRECT, CONTINGENT OR ABSOLUTE, MATURED OR UNMATURED, SECURED OR UNSECURED, AND HOWEVER CONTRACTED OR ARISING (ALL SUCH OBLIGATIONS AND LIABILITIES BEING HEREINAFTER CALLED THE "OBLIGATIONS").

2. Guarantor hereby promises to pay Creditor when due, on demand, all indebtedness of any kind or nature emanating from the Agreements (including, without limitation, if an event of default shall occur under the Agreements, payment on demand of all unpaid sums to become due under the defaulted Agreements for the entire term thereof), whether now or hereafter arising; and Guarantor agrees to indemnify and hold Creditor harmless from and against any and all losses, liabilities and costs caused by or arising from (in any way, directly or indirectly) any failure of Obligor to fully, promptly and completely satisfy the Obligations. "Losses, liabilities and costs" shall include (without limitation) all obligations, claims, demands, judgments, costs and expenses of whatever kind or nature (including, without limitation, attorneys' fees). Time is of the essence with regard to the performance of Guarantor's obligations hereunder.

3. In enforcing this Guaranty, Creditor shall not be required to (i) present for payment any evidence of the Obligations (known as "presentment" or "presentment for payment"); (ii) give notice that amounts due have not been paid (known as "notice of dishonor"); or (iii) obtain an official certification of nonpayment (known as "protest") or give Guarantor notice of any such "protest;" and Guarantor hereby waives presentment, presentment for payment, notice of dishonor, protest and notice of protest, and notice of acceptance hereof.

4. Guarantor hereby consents and agrees that without any further notice to, or assent by Guarantor, the liability of Obligor or any other guarantor of the Obligations may from time to time, in whole or in part, be amended, including, without limitation, extended, renewed, accelerated, supplemented, settled, assigned, assumed or released, in Creditor's sole discretion, and that any collateral for any of the Obligations or for any guaranty thereof (including this Guaranty) may from time to time, in whole or part, be exchanged, sold, released or surrendered in Creditor's sole discretion. No such amendment, exchange, sale, release or surrender shall in any way impair, affect or release the liability of Guarantor or constitute a waiver of any of Creditor's rights hereunder.

5. This Guaranty is unlimited, absolute, irrevocable and unconditional and shall continue in full force and effect until all the Obligations shall have been fully, completely and finally satisfied and paid. The obligations of Guarantor hereunder shall continue and survive the repossession of any property leased pursuant to the Agreements, or any property in which Creditor has a security interest securing any of the Obligations, whether or not any such repossession constitutes an "election of remedies" against the Obligor or any other person. Guarantor agrees to be obligated hereunder notwithstanding any termination of the Agreements in whole or part by operation of law or any unenforceability or invalidity of the Agreements for any reason whatsoever. The obligations of the Guarantor shall not be subject to any abatement, setoff, defense or counterclaim for any cause whatsoever. Guarantor's liability hereunder is joint and several with any other guarantor of the Obligations, whether such guarantor executes this document or any other guaranty document. This Guaranty is in addition to, and not in limitation or derogation of, any and all other guaranties of the Obligations executed by any guarantor. In the event of any conflict between the provisions of this Guaranty and those of any other guaranty, the provisions of this Guaranty shall govern.

6. Creditor may proceed directly and in the first instance against any Guarantor or combination of Guarantors and have its remedy hereunder without first being obliged to resort to any other right or remedy or security for any of the Obligations. If there shall be any securities for any of the Obligations, or for the obligations of Guarantor hereunder, or for the obligations of any other guarantor of any of the Obligations, Creditor may proceed against and/or enforce any or all of such securities in whatever order it may, in its sole discretion, deem appropriate. Any amount(s) received by Creditor from whatever source and applied by it to any of the Obligations shall be applied in such order of application as Creditor shall, in its sole discretion, elect.

7. Notwithstanding any provision hereof or any provision of any of the Agreements, or any presumption of applicable law or principle of legal construction to the contrary: (i) nothing shall discharge or satisfy Guarantor's obligations hereunder except full, complete and final payment and satisfaction of all the Obligations and all indebtedness and indemnities owed hereunder; and (ii) Guarantor hereby waives any and all defenses to its obligations hereunder including, without limitation, any defense arising by reason of any cessation of the Obligor's business or any bankruptcy, insolvency or business failure of the Obligor or any other person. Each and every waiver made herein by Guarantor is and shall be construed as an absolute, irrevocable and unconditional waiver of the right waived. Payments received by Creditor from or on behalf of Obligor shall be solely for the benefit of Creditor and shall not benefit Guarantor in any way. Guarantor acknowledges that Guarantor is not and shall not be construed as a "Creditor" of Obligor by virtue of this Guaranty.

8. Within thirty (30) days after Creditor's request, Guarantor shall deliver all information requested by Creditor which Creditor deems reasonably necessary to determine Guarantor's current financial condition.

9. Guarantor hereby represents and warrants to Creditor that all information concerning such Guarantor, including (without limitation) financial statements and other financial information furnished to Creditor in connection with the Agreements, was true, complete and accurate as of the date of delivery thereof to Creditor, and all such information remains true, complete and accurate, and there has been no material adverse change in Guarantor's financial condition as of the date of the most recently delivered financial data. In the event of any breach of Guarantor's representations and warranties herein or any material adverse change in the financial condition of Guarantor, upon the request of Creditor, Guarantor shall promptly furnish to Creditor such additional security for the performance of Guarantor's obligations hereunder as Creditor may reasonably request. Guarantor shall not transfer all or substantially all of its assets without the prior written consent of Creditor. A default hereunder shall be a default under the Agreements.

10. No notice of termination of this Guaranty shall be effective unless and until such notice shall be in writing and executed by Guarantor and shall have been received by Creditor, provided, however, that in the event of such notice, this Guaranty shall continue in full force and effect with regard to all Obligations created, existing or arising prior to the date of such receipt. No modification hereof or amendment hereto and no waiver of any term or provision hereof shall be

**EXHIBIT 7**

valid unless in writing and signed by an authorized officer of Creditor. No delay or failure on the part of Creditor in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Creditor of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. No action of Creditor permitted hereunder shall invalidate or in any way impair this Guaranty. No waiver of any right or remedy hereunder shall constitute a waiver of any other or further right or remedy hereunder.

11. Without any further notice to, or assent by Guarantor, this Guaranty may be assigned by Creditor and reassigned, in the sole discretion of Creditor or its assignee. As used herein, the term "Creditor" includes Creditor and any successor or assign of Creditor. This Guaranty shall be binding upon Guarantor's heirs, successors, representatives, and assigns.

12. Guarantor represents and warrants that this Guaranty is intended to be legal, valid, binding and enforceable in accordance with its terms. Whenever possible, each term and provision of this Guaranty shall be interpreted so as to be effective and to effectuate its intent under applicable law. If any of the provisions of this Guaranty are contrary to, prohibited by, or held invalid under applicable laws, regulations or public policy of any jurisdiction in which it is sought to be enforced, then that provision shall be considered inapplicable and omitted but shall not invalidate the remaining provisions. If this executed Guaranty is delivered to Creditor by facsimile transmission, such document (and any signature thereon) shall be treated as, and have the same force and effect as, an original.

13. In any dispute arising hereunder, Guarantor shall pay Creditor's costs and expenses, including reasonable attorneys' fees and costs incurred in connection herewith and/or arising under the Agreements, including any incurred prior to commencement of a suit, prior to or at trial, on appeal or in any other proceeding. This Guaranty shall be governed by and construed in accordance with the laws of the State of Oregon, and service of process by certified mail, return receipt requested, or overnight courier will be sufficient to confer personal jurisdiction over Guarantor for purposes of litigating any actions arising hereunder. Venue shall be in Portland, Oregon, at Creditor's option. This Guaranty shall take effect as a sealed instrument. GUARANTOR AND CREDITOR EACH IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS GUARANTY.

14. In connection with this Guaranty and the Transaction(s) with the Obligor, any Guarantor who is an individual confirms his/her instruction that Creditor obtain a credit report on him/her self, and further authorizes Creditor to obtain such a credit report for purposes of reviewing and/or considering additional financing arrangements with the Obligor.

IN WITNESS WHEREOF, the undersigned has caused this Guaranty to be duly executed and delivered as of July 06, 2005.

WITNESS

Signature: [signed]

Print Name: Gordon Young

Address: 1215 Magnolia Dr.
Carrollton, TX 75007

By: [signed]
Jeffrey D. Young

GUARANTOR'S SIGNATURE MAY NOT BE WITNESSED BY GUARANTOR'S SPOUSE OR OTHER FAMILY MEMBER

3/05

ADDRESS FOR ALL NOTICES TO CREDITOR:
PO Box 230789
Portland, OR 97281-0789